## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD NOWAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 4971 |
| | ) | |
| INTERNATIONAL TRUCK AND ENGINE | ) | |
| CORPORATION, a Delaware corporation | ) | |
| doing business in Illinois | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Nowak ("Nowak") filed a nine-count, third amended complaint against defendant International Truck and Engine Corporation ("International") alleging that International failed to promote Nowak to various positions because of his age (63), in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); his race (caucasian), in violation of the Civil Rights Act of 1866 as amended, 42 U.S.C. §1981 ("Section 1981"); and his sex (male), in violation of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e-1 *et seq.* ("Title VII"). Nowak also alleges five counts of retaliation based on his receipt of negative performance evaluations (Count VI-VII); his inability to apply for a job opening (Count VIII); and his subsequent termination (Count IX). International has moved for summary judgment on all counts. This court has jurisdiction under 29 U.S.C. § 1331, 29 U.S.C. § 626(b). 29 U.S.C. § 216(b), and 42 U.S.C. § 2000e-5(f)(3),. For the reasons set forth below, International's motion is granted in part and denied in part.

1

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

Nowak, a white male born on September 15, 1942, began working at International in 1967 as a trainee in the heat treat department. (International's Local Rule 56.1 Statement of Material Facts ¶ 3, hereinafter "International ¶ __). Aside from a two year stint with another company, Nowak held manufacturing positions in the heat treat and machining and assembly departments from 1968 to 1988. *Id.* ¶ 4. In 1988, Nowak transferred to International's Human

2

Resources Department, where he remained until his termination in September 2004. *Id.* Prior to his termination, Nowak had advanced to become a Senior Labor Specialist, a level 6 salary grade position. *Id.* ¶ 5.

Throughout Nowak's tenure at International, Nowak aggressively sought promotions. (*Id.* ¶ 17). In fact, from 1980 to 2004 Nowak applied for up to 30 positions at International. (*Id.* ¶ 18). In an effort to improve his prospects, Nowak obtained an MBA and several certifications in human resources management and participated in company-sponsored training opportunities. (Nowak's Local Rule Statement of Additional Material Facts ¶ 4, hereinafter "Nowak ¶ __). Despite his improved qualifications, Nowak applied for but was denied several level 7 positions during 2001. His failure to receive any of those promotions is the subject of this lawsuit.

## A.    Human Resources Manager, Information Technology

Nowak nominated himself for the position of Human Resources Manager, Information Technology in January 2001. (Nowak ¶ 23). Kay Carroll ("Carroll"), the Human Resources Operations Director posted the position, reviewed the applications, and selected candidates for interviews. *Id.* ¶¶ 20-22. The person selected for the position was to report to Carroll and to the Vice President of Information Technology, Art Data. *Id.* ¶ 29. At some point during the selection process, Data told Carroll that "it would be nice to get some diversity in the department." *Id.*

While Nowak possessed the stated "must requirements" for the position, a bachelor's degree and five years of "Human Resources generalist experience" Carroll did not select him for an interview. *Id.* ¶ 27. Carroll assessed Nowak's qualifications and decided that he was not

sufficiently qualified for the position.[1] (International ¶ 23). Carroll then contacted Nowak's supervisor, Mike Bednarz, to inquire as to whether Bednarz had any information regarding Nowak that would change her decision. (Nowak ¶ 31). Bednarz responded that based on Carroll's description of what she was looking for, Nowak did not have the experience for the position. *Id.* Carroll selected Tanya Griffin, an African-American female under the age of 40, for the position. (International ¶ 24). Prior to arriving at International, Griffin had been a human resources manager at 3M. *Id.*

Carroll notified Nowak of her decision and explained that she did not believe that he possessed the interviewing or recruiting skills necessary for the position. (Nowak ¶ 27). While Nowak disagreed with her decision, Nowak acknowledges that he had only limited experience recruiting hourly workers for International's manufacturing departments and had no experience recruiting information technology professionals.[2] *Id.* at ¶ 28. Carroll suggested that in order to get the necessary experience Nowak should consider making a lateral transfer into a different position.[3]

---

[1]Nowak disputes that Carroll believed he lacked the qualifications for the position, arguing that (1) he was in fact qualified, (2) Bednarz incorrectly advised Carroll that he was not qualified; and (3) Art Data told Carroll that it would be nice to get some diversity into the department. *See* (Nowak's L.R. 56.1 Resp. ¶ 23). Nowak's denial does not comport with L.R. 56.1 which "emphasizes that it is inappropriate to include legal conclusions and/or argument in the Rule 56.1 Statement of Facts." *Cady v. Miss Paige, Ltd.*, 2004 WL 1144044*4 (N.D. Ill. 2004). Moreover, none of Nowak's cited evidence actually contradicts Carroll's belief. As a consequence, the court deems this fact admitted. L.R. 56.1(b)(3)(B).

[2]Nowak disputes this fact, arguing that the position did not require the successful candidate to conduct the recruiting. But Nowak concedes that a human resources manager should be knowledgeable about recruiting in order to supervise subordinates who do conduct recruiting. Thus, Nowak concedes that recruiting experience was a relevant qualification.

[3]Nowak does not specifically deny that Carroll suggested that he consider a lateral transfer. Instead, Nowak states that no lateral positions were available. The availability of a lateral position is irrelevant to the cited fact that Carroll suggested he consider such a position and thus, the court deems the fact admitted.

## B.  Business Team Leader, Machining and Production Assurance

Shortly after he was denied an interview for the Information Technology position, Nowak nominated himself for the position of Business Team Leader, Machining and Production Assurance, which was posted in February 2001. (International ¶¶ 32, 37). The job posting for the position stated "Qualifications that candidate <u>MUST</u> possess in order to gain consideration for this position: ... BS/BA in business or technical area, 3 or more years supervisory experience." (Nowak ¶ 34) (Emphasis in original). Nowak possessed the "must" requirements for the position, but he had not worked in manufacturing for over 12 years. (International ¶¶ 35, 41). In addition, Nowak had no experience leading a group of professional engineers. *Id.* Though Nowak had supervised skilled trades people during his many years in manufacturing, he had not done so during his nearly 13 years in the human resources department. *Id.* ¶ 41.

John Davis was selected for the position. *Id.* ¶ 44. He had served previously as Plant Manager in Florence, Kentucky and as Business Team Unit Leader in International's Huntsville, Alabama facility. *Id.* Davis's previous positions, like the Business Team Leader, Machining and Production Assurance position, were level 7 salary grade positions. *Id.* Though Davis had held the same position at a different International facility, he did not satisfy all of the posted "must" requirements for the position. (Nowak ¶ 36). Specifically, Davis did not possess a four-year degree. *Id.* International's unwritten company policy, however, provided that a position may be awarded to a candidate who does not satisfy a "must" requirement on a job posting if the candidate held the same position elsewhere.[4] (International ¶ 46).

---

[4]Nowak does not deny this statement of International policy. Instead, Nowak argues that the job posting did not identify the exception and he is unaware of International's making an exception for a candidate who did not possess a college degree. Nowak's denial does not contradict International's averment of fact and, again fails to

## C. Human Resources Manager, Corporate Staff

Nowak also nominated himself for the position of Human Resources Manager, Corporate Staff, which was posted from August 25, 2001 to September 4, 2001. (International ¶ 47). Carroll again posted the position and participated in the interview of the candidates. Carroll selected only two applicants for interviews: Nowak and Cheryl Blair, an African-American female who was over the age of 50. *Id.* ¶¶ 50, 51. Blair, the former Manager for Truck Finance and Marketing, was selected for the position. *Id.*

Carroll notified Nowak that he had not been awarded the position. *Id.* ¶ 53. Carroll again encouraged Nowak to make a lateral transfer to diversify his experience and better qualify himself for a promotion within the Human Resources department. *Id.* ¶ 54. Nowak rejected Carroll's suggestion and affirmed that he was only interested in level 7 positions. *Id.*

Although Carroll stated that she selected Blair because she was more qualified than Nowak, Heather Kos, a human resource employee, told Nowak that Blair had been selected for the position before Nowak interviewed for the position. (International ¶ 52; Nowak ¶ 38). In addition, Nowak learned that Nowak's interviewers did not have a copy of his self-nomination form or resume at the time of his interview. (Nowak ¶ 39).

## D. Business Team Leader, Engine Assembly and Materials

In December 2001, Nowak was considered for the position of Business Team Leader, Engine Assembly and Materials. (International ¶ 64). Bednarz, Nowak's supervisor, and Bob Hilsen, Director of Continuous Quality for the Engine Group, were responsible for selecting the applicants. *Id.* ¶ 65. The only other candidates for the position were Marcellino Bomicino and

comport with L.R. 56.1. As a consequence, the court deems this fact admitted. 56.1(b)(3)(B).

Joe Meyer. *Id.* ¶ 65. Bednarz told Nowak that his previous interview for the Business Team Leader, Machining and Production Assurance position would apply to his bid for this position because of the close proximity of the posting and the similarity of the positions. *Id.* ¶ 67. None of the candidates were re-interviewed for the position because they had been candidates for the earlier position and the decision-makers did not believe additional interviews were necessary. *Id.* Bomicino, a white male over the age of 50, was selected for the position.

Bednarz notified Nowak that he had not been selected for the interview. (Nowak ¶ 40). Bednarz told Nowak that the reason he had not been awarded the position was because "there were not enough old timers around to push for you." *Id.*

### E. Nowak's Allegations of Discrimination

After being denied a fourth promotion in 2001, Nowak met with Jeff Bowen, Director of Human Resources for the Engine Division, to discuss job issues. *Id.* ¶ 41. On January 18, 2002, Nowak sent an email to Bowen explaining that he believed he had been discriminated against in the denial of the promotions. *Id.* ¶ 42. Bowen referred Nowak's complaint to Lisa Morris, International's Diversity and Equal Employment Opportunity manager. *Id.* ¶ 43.

One week later, on January 25, 2002, Nowak filed his first Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Nowak filed a second charge on July 15, 2002. (International ¶ 93). On July 18, 2003, Nowak filed the subject lawsuit, and on October 13, 2004, following his termination from International, Nowak filed a third charge with the EEOC. (International ¶ 94; Nowak ¶ 57).

### F. Nowak's Job Performance

At the end of the calendar year, International conducted a Total Performance

7

Management review ("TPM"), which is its employee performance appraisal. (International ¶ 13). The process involved a meeting between the employee and their supervisor in which they discussed the employee's performance in meeting the goals and objectives that were assigned during the year. (Nowak ¶ 71).

In 2000 and 2001, Bednarz ranked Nowak's performance as "meets expectations" or "generally exceeds expectations," giving Nowak praise for his demonstration of leadership in managing the "apprenticeship process" and "champion[ing] controllable absenteeism." *Id.* ¶¶ 46, 49. In 2002, 2003, and 2004, however, Nowak's performance was rated as "meets expectations with few exceptions." (International ¶ 72). As a consequence, pursuant to International policy Nowak was no longer permitted to nominate himself for promotions. (Nowak ¶ 47). James Marzec denied Nowak the opportunity to apply for the position of Human Resources Director, International Finance Group. *Id.* Despite International's policy, Marzec requested that an African-American employee, who also had received a "meets expectations with few exceptions" performance rating, be permitted to apply for a promotion. *Id.* ¶¶ 82, 83.

In Nowak's 2002 TPM, Bednarz noted several deficiencies in Nowak's performance. Specifically, Bednarz criticized Nowak for failing to exhibit leadership with management and to develop a comprehensive labor strategy and initiative action with regard to outsourcing the housekeeping function. *Id.* ¶¶ 48, 51.

On November 26, 2003, Bednarz met with Nowak to review his 2003 TPM. (International ¶ 81). Among other criticisms, Bednarz criticized Nowak for failing to meet two of his performance objectives. Nowak admits that he failed to meet "Goal #1 - Explore and implement with Karl Knecht opportunity to lead Engine Group, Human Resources initiative such

8

as TPM, LRP, etc. and #2 - Develop quality recognition system for manufacturing, as set forth on his 2003 TPM." *Id.* Nowak explains, however, that extenuating circumstances prevented him from accomplishing the first objective. Nowak provides no explanation, however, for his failure to complete the latter objective. *Id.*

In March 2004, Marzec became Nowak's supervisor. The following month, Marzec reviewed a performance issue letter with Nowak dated April 21, 2004. *Id.* at ¶ 88. It was Marzec's policy to give employees performance issue letters when he deemed their performance to be "so egregious that immediate correction [was] necessary." *Id.* at ¶ 86. In that letter, Marzec warned Nowak that Nowak's failure to demonstrate the desire or initiative to improve his performance could result in termination. *Id.* Marzec again expressed his concerns with Nowak's performance in a June 21, 2004 letter. *Id.* ¶ 87. In that letter, Marzec outlined Nowak's work tasks and goals, some of which were not identified in Nowak's 2004 TPM, and warned that if Nowak failed to meet the objectives he could be subject to progressive discipline up to and including termination. (International ¶ 87; Nowak ¶ 79).

On September 14, 2004, Marzec terminated Nowak's employment. At the time of his termination, Nowak had met some of his 2004 goals. (Nowak ¶ 80).

## DISCUSSION

### I.     Failure to Promote

Counts I - IV of Nowak's third amended Complaint allege that International failed to promote him because of his age, sex, or race in violation of the ADEA, Title VII, or Section 1981. Nowak's claims relate to the four positions for which Nowak applied but was not hired: Human Resources Manager, Information Technology; Business Team Leader, Machining and

Production Assurance; Human Resources Manager, Corporate Staff; and Business Team Leader, Engine Assembly.[5]

Section 623 of the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by white citizens." The right includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(b). Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. §2000e-2(a)(1).

To establish a case of intentional discrimination under the ADEA, Section 1981, or Title VII, the plaintiff may satisfy his burden of proof either by offering direct evidence of discriminatory intent or by relying on the burden-shifting framework set forth in *McDonnell-Douglas Corp.* v. *Green*, 411 U.S. 792 (1973); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1219 (7th Cir. 1980) (per curiam) (extending *McDonnell-Douglas* method to age cases). Under the *McDonnell-Douglas* framework, the plaintiff bears the initial burden of producing evidence to sustain a *prima facie* case of discrimination. If the plaintiff meets this burden, the

---

[5]Nowak expressly waived his claims relating to the Blue Diamond position. *See* Nowak's Resp. to International ¶ 10.

employer must then produce a legitimate, non-discriminatory reason for his action. If the employer offers a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to present evidence that the employer's proffered reason is pretextual. *Johnson* v. *Zema Systems Corp.*, 170 F.3d 734, 742 (7th Cir. 1999). At all times, the plaintiff carries the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. *Sample v. Aldi*, 61 F.3d 544, 547 (7th Cir. 1995).

To state a *prima facie* claim in a failure to promote case, the plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the job in question or was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees not in his protected class. *Johnson*, 170 F.3d at 742-43.

In this case, however, Nowak alleges claims of reverse race and sex discrimination. Even though Title VII's prohibitions against race and sex discrimination generally protect white-caucasians and males as well as racial minorities and women, *Gore v. Indiana University*, 416 F.3d 590, 592 (7th Cir. 2005), the first prong of the *McDonnell-Douglas* test cannot be used. *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003). Instead, because it is the "unusual employer who discriminates against majority employees," *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 456-457 (7th Cir. 1999), the plaintiff in a reverse-discrimination case "must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites [or men] or evidence that there is something 'fishy' about the facts at hand." *Phelan*, 347 F.3d at 684.

11

## A. Human Resources Director, Information Technology

Nowak first alleges that International discriminated against him based on his age, sex and race in violation of the ADEA, Title VII, and Section 1981 by not promoting him to the position of Human Resources Director, Information Technology. With respect to Nowak's age discrimination claim, Nowak proceeds under both the direct and indirect methods of proof, while he proceeds solely under the indirect method of proof with respect to his race and sex discrimination claims.

Addressing Nowak's direct evidence of age discrimination first, Nowak has testified that International employee Mike Bednarz stated in January 1998 and December 2001 that Nowak was not selected for the positions of Engine Assembly Team Unit Leader and Business Team Leader, Engine Assembly and Materials because "there were not enough old timers to push for him." (Nowak L.R. 56.1 ¶¶ 19-24, 33-40). Nowak argues that Bednarz's references to "old-timers" constitute direct evidence of a discriminatory animus underlying International's denial of his applications for promotions. International argues in response that Bednarz's "old-timers" comments are insufficient to give rise to an inference of age discrimination because they are "stray remarks" that were not relied on by Human Resources Director Carroll in making her decision to deny Nowak an interview.

The Seventh Circuit has not specifically created a "stray remark" doctrine. Instead, the Seventh Circuit has stated that "all that [the cases addressing the issue of stray remarks] stand for is the common sense proposition that a slur is not in and of itself proof of actionable discrimination, even if repeated. The remark taken to be a slur may have been innocent and

12

misunderstood; or it may have had no consequence, either because it did not reflect the thinking of the people with decision-making authority or because it did not motivate even the person uttering it to act on it. It thus may fall far short of establishing a *prima facie* case." *Shager v. Upjohn Co.*, 913 F.3d 398, 402 (7th Cir. 1990).

The nature and context of the comments attributed to Bednarz do not permit an inference of an underlying desire not to promote older employees. Bednarz's reference to "old-timers" is a descriptive rather than evaluative term. Bednarz's alleged statements do not denigrate Nowak or other employees for their age. Indeed, the statements suggest only that Nowak failed to receive the promotions because he had failed to cultivate sufficiently strong relationships with senior International employees or, as Bednarz himself explained, that the employees that knew Nowak from his years working in manufacturing are no longer employed by International. Thus there is no basis for a fact-finder to infer from this evidence that age played a role in Nowak's failure to receive the promotions.

Nowak implies that *Notaro v. Digital Equipment Corp.*, 1994 WL 457231 *4 (N.D. Ill. 1994) and *Zielonka v. The First National Bank of Chicago*, 1994 WL 568696 *5 (N.D. Ill. 1994) stand for the proposition that age-related remarks are always sufficient to raise an inference of age discrimination. The holdings of those cases, however, are not so broad. *Notaro* and *Zielonka* merely hold that ambiguous or seemingly innocuous age-related statements may support an inference of discrimination where there are other facts or evidence indicating an underlying discriminatory animus. Likewise, in *Zielonka*, the Court found that the number and nature of statements attributed to a Senior Vice President, including the statement "I've got to get rid of these old-timers. This is ridiculous. They are not willing to change," permitted an inference of

an underlying desire not to retain older employees.

Unlike the plaintiffs in *Notaro* and *Zielonka*, Nowak fails to present any other facts or evidence to support an inference of age discrimination. Moreover, whereas the statements in those cases explicitly depreciate older workers as stubborn, unmalleable, or otherwise ill-suited for a new marketplace, the statements attributed to Bednarz are, at most, ambiguous. Indeed, the term "old-timers" may refer to long-time employees as well as to employees over the age of 40. While the court is mindful that all reasonable inferences must be drawn in favor of Nowak and that "the task of disambiguating ambiguous utterances is for trial," *Shager*, 913 F.3d at 402, the negative connotations that cluster around the term "old-timers" are simply too tepid to create, in themselves, a triable issue of age discrimination. *Id.*

Since Nowak has failed to present direct evidence of age, race or sex discrimination, Nowak must proceed under the *McDonnell-Douglas* burden-shifting method to establish his claims relating to the Information Technology position.

Nowak identifies two "fishy" circumstances that he contends are sufficient to raise an inference that International had an anti-white male bias and to satisfy the heightened first element in reverse discrimination cases. First, Nowak cites the fact that Bednarz told Carroll that Nowak did not have the experience that she was seeking for the Information Technology position despite the fact that Nowak met the posted requirements for the position. Carroll testified that she contacted Nowak's supervisor, Bednarz, to inquire as to whether she properly understood Nowak's qualifications. Carroll testified that the position required someone with the type of "human resources generalist experience" necessary to develop and drive International's "people

development strategy," which entailed "recruitment efforts," "high-level succession planning," and interacting with certain publications to maintain the Information Technology organization's reputation as a good place to work. (Carroll Dep., pp. 18-21).

The first "fishy" statement, attributed to Bednarz, consists of the following: "[N]o, based on what you have told me about the job and what you are looking for in the job I would agree that Ed does not have that kind of experience that you are looking for." (Carroll Dep., pp. 20). This simple and straightforward response to Carroll's inquiry appears reasonable in light of Nowak's own testimony. Nowak testified that he lacked the type of recruiting experience that Carroll sought for the Information Technology position.[6] (Nowak Dep. pp. 95). Nowak further testified that the Human Resources manager needed adequate knowledge about recruiting even if, as he avers, the human resources specialists and not the managers personally conducted the recruiting. *Id.* at pp. 96-97. Thus, there is no basis to infer anything "fishy" from Bednarz's statement.

Second, Nowak argues that the existence of International's Affirmative Action Plan and a statement made by Vice President of Information Technology, Art Data, that "it would be nice to get some diversity" into the Information Technology department are additional "fishy" circumstances demonstrating International's inclination to discriminate against white males. An affirmative action plan alone is not evidence of "fishy" circumstances sufficient to prove the

---

[6]Nowak testified that he had limited experience recruiting hourly workers to fill positions in International's plants. (Nowak Dep. at pp. 95). He further testified that he understood that his experience was different than the type of recruiting experience Carroll sought for the Information Technology position, which involved recruiting information technology professionals. *Id.*

modified first element of the *prima facie* case of reverse-discrimination.[7] *Christensen v. Equitable Life Assur. Soc. of* U.S., 767 F.2d 340, 343 (7th Cir. 1985). Evidence that the decision-maker was under pressure from an affirmative action plan can, however, give rise to an inference of discrimination. *Preston*, 397 F.3d at 542 (7th Cir. 2005).

In this case, Data's statement is insufficient to raise a suspicion that International is the unusual employer that discriminates against non-minorities. Data's platitudinous statement merely affirms the aspirations and commitments enshrined in International's Affirmative Action Plan. Moreover, while Data made the statement to Carroll, the decision-maker for the Information Technology position, Carroll testified that diversity "certainly [was] not a requirement" and was "nothing that [she] would go out looking for." (Carroll Dep. pp. 59-60). Carroll further testified that she did not consider affirmative action goals when making her hiring decision for the Information Technology position. *Id.*

Even if Nowak's evidence was sufficient to establish the modified first element of a *prima facie* claim, Nowak's race and sex discrimination claims (like his age discrimination claim) relating to the Information Technology position would fail because Nowak cannot rebut International's legitimate, non-discriminatory reason for its decision not to select Nowak for the position. Carroll testified that she selected Tanya Griffin because she and other decision-makers

----

[7]Nowak states that "the existence of an affirmative action plan can satisfy the heightened reverse discrimination standard." (Nowak's Resp. at 7). In support of this proposition, Nowak cites *Preston v. Wisconsin Health Fund*, 397 F.3d 539 (7th Cir. 2005). In that case, however, the Court of Appeals merely found that "background circumstances" sufficient to satisfy the modified first element of the *prima facie* case included circumstances where "the men running the company are under pressure from affirmative action plans, customers, public opinion, the EEOC, a judicial decree, or corporate superiors imbued with belief in 'diversity' to increase the proportion of women in the company's workforce." *Preston*, 397 F.3d at 542. *Preston* thus stands for the more limited proposition that an affirmative action plan coupled with other facts or evidence indicating an employer is inclined to discriminate against non-minorities may give rise to an inference of discrimination.

believed that Griffin was the most qualified candidate for the position. (Carroll Dep. pp. 14-15:1-17). Nowak presents no evidence to cast doubt on the legitimacy of International's proffered reason for its hiring decision. Instead, Nowak argues that he was the better qualified candidate based on nothing more than his own opinion, which is insufficient to create an issue of fact.

The Seventh Circuit has held that "where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002) (internal quotations and citations omitted).[8] Thus, "in effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. *Id.* at 1180-1181 (internal quotations and citations omitted).

Applying this standard to the facts in this case, there is no basis to conclude that Nowak's credentials were so superior to Griffin's that no reasonable employer could have selected her for

[8]Nowak argues that in cases where there is evidence of discrimination in addition to the differences in applicants' competing qualifications, the jury may return a verdict for the plaintiff if it disagrees with the employer as to who is the best qualified applicant. (Nowak Resp. at 8) (citing *Millbrook*, 280 F.3d at 1180). The court does not necessarily disagree. But in this case, the court having already decided that Bednarz's various statements, International's Affirmative Action Plan, and Art Data's statements are not evidence of discrimination, Nowak is left to attempt to create a triable issue of fact based solely on his comparative qualifications. Accordingly, to survive summary judgment, Nowak's qualifications must be so superior to those of Griffin that no reasonable person could have selected her for the position.

the position. Griffin, like Nowak, satisfied all of the "must" requirements for the position. While Nowak had an MBA, as well as relevant certifications, Nowak concedes that he lacked pertinent professional recruiting experience, which, as Carroll explained and as is evident from the position description, was critical to success in the position. For that reason alone, Nowak cannot demonstrate that his credentials were clearly superior to those of Griffin. Accordingly, International's motion for summary judgment relating to Nowak's Information Technology claims is granted.

## B.    Business Team Leader, Machining and Production Assurance

Nowak next contends that International discriminated against him based on his age in violation of the ADEA by not promoting him to the Business Team Leader, Machining and Production Assurance position in January 2001. Nowak argues that because the successful applicant, John Davis, did not possess a bachelor's degree, a "must" requirement for the position, he can satisfy the modified first element of a *prima facie* case and raise an issue of fact as to whether International's proffered reason for hiring Davis is pretextual.

Contrary to Nowak's argument, the fact that Davis lacked a bachelor's degree does not suggest that his promotion was "fishy" or that International's explanation for his hiring is pretextual. International's unwritten company policy provides that a position can be awarded to a candidate who does not satisfy a "must" requirement if the candidate already held the same position elsewhere in the company.

Prior to obtaining the position at issue in this case, Davis had served as a Plant Manager in Florence, Kentucky, and as Business Team Leader, Machining and Production Assurance in

International's Huntsville, Alabama facility, both level 7 salary grade positions. Davis thus held the same position at a different International facility. Moreover, as a result of his tenure in the above-referenced positions, Davis had experience in machining and skills trades and extensive experience supervising the manufacturing operations of large, complex organizations at level seven salary grade positions. Nowak, in contrast, had not worked in manufacturing for over 12 years and possessed no prior experience leading a group of professional engineers.

Nowak disputes that International's company policy permitted an exception to the posted job requirements but fails to provide any evidence to support his position. Instead, Nowak simply asserts that he "is not aware of the Company making an exception for one not having a college degree when a college degree was a must qualification." Nowak's asserted lack of knowledge, however, is insufficient to rebut the sworn testimony of Lisa Morris, one of International's Human Resources Managers, that International does not disqualify an applicant seeking a lateral transfer from a position that now requires a degree but did not during the years the applicant held the same position in a different International facility. Nowak cannot identify a single instance in which International failed to apply the policy and "[s]peculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996).

Nowak also argues that International's unwritten exception for lateral transfers is inconsistent with the "must" requirements identified in the job posting and therefore is evidence of pretext. The court disagrees. The job posting and unwritten exception must be read together. The evidence indicates that International has decided reasonably to "grandfather" in those applicants who have developed the required skills and qualifications by actually performing the

job. In *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876-877 (7th Cir. 2002), the lone case cited by Nowak in support of his position, the court held that "an inference of pretext may be permissible only when decisionmakers make false or inconsistent statements about the circumstances of a particular decision." In this case, the evidence demonstrates that the decisionmakers have without exception maintained that Davis was selected for the position because he was the most qualified and that he was exempted from the "must" requirement of a college degree because he had held the same position in a different International facility. Accordingly, there is no evidence to support an inference of pretext.

Since Nowak has presented no evidence of discrimination other than his competing qualifications, Nowak must demonstrate that his qualifications are so superior that no reasonable person could have selected Davis for the position to survive summary judgment. *Millbrook*, 280 F.3d at 1180. In light of the fact that Davis had already served as a Business Team Unit Leader in Intentional's Huntsville, Alabama facility, there is no basis for the jury to conclude that Nowak was clearly more qualified than Davis. Accordingly, International's motion for summary judgment relating to the Machining and Production Assurance position is granted.

## C. Human Resources Manager, Corporate Staff Position

Nowak also contends that Intentional discriminated against him on the basis of his age, sex, and race by not promoting him to the position of Human Resources Manager, Corporate Staff. As evidence of "background circumstances" and pretext, Nowak relies on many of the already discredited arguments first raised in support of his earlier claims: International's Affirmative Action Plan and Bednarz's response to Carroll's inquiry regarding Nowak's

suitability for the Information Technology position. Having already addressed these arguments. the court need not consider them again here. *See supra*, Section I(A).

Nowak does, however, present new evidence that suggests something "fishy" about the facts surrounding his failure to receive the Corporate Staff promotion, and raising an inference of discrimination and pretext. Evidence that an applicant received "little or no consideration" for the promotion may constitute a "fishy" circumstances sufficient to satisfy the heightened first element of a *prima facie* case. *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C. Cir. 1983). In this case, Nowak states that Heather Kos, a Human Resource employee working for Carroll, told Nowak before his interview that the position had been filled already by the successful candidate. Cheryl Blair. In addition, Nowak contends that the interviewers did not have copies of his resume or application materials at the time of his interview.

International argues that there is no evidence that Kos was in a position to know about Carroll's selection for the position. But it is undisputed that Kos was an International employee working in the Human Resources Department. Thus, it is reasonable to infer that Kos was in a position to know whether Carroll pre-selected Blair. Furthermore, International's argument merely addresses the weight properly attributable to Kos's statement, and the court may not balance the relative weight of conflicting evidence on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

International's characterization of Kos's statement as a "stray remark" is also unpersuasive. Kos's allegation is clearly probative of discrimination. If Nowak can establish at trial that Carroll did not consider the qualifications of the applicants prior to making her

selection, the jury would be entitled to draw the inference that International was motivated by an improper purpose when it denied Nowak the Corporate Staff promotion. Thus, Kos's statement is evidence that International's justification for hiring Blair (that she was more qualified) is pretextual.

## D. Business Team Unit Leader, Engine Assembly and Materials

Finally, Nowak contends that International discriminated against him based on his age by not promoting him to the position of Business Team Unit Leader, Engine Assembly and Materials. In support of his position, Nowak asserts that Bednarz's reliance on his "own subjective perception of Bomicino's reputation as being "a good, honest and fair leader" is direct evidence of discrimination.[9] But a "subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas* analysis" for selecting a particular candidate. *Millbrook*, 280 F.3d at 1176 (citation omitted). Indeed, "subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service-oriented economy ...." *Id.* Thus, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII ...." *Id.*

In this case, there is no evidence that Bednarz's reliance on his subjective perception of Bomicino served to mask his discriminatory intent. The traits attributed to Bomicino are age-neutral. Moreover, while Bednarz acknowledged that he factored in his subjective perceptions of

---

[9]Nowak again cites Bednarz's "old-timers" comment as proof of discrimination. Having already addressed this argument, the court need not address it again here. *See supra*, Section I(A).

Bomicino, he also stated that he relied on Bomicino's extensive manufacturing experience when selecting Bomicino for the position. Thus, there is no basis to infer discrimination from Bednarz's partial reliance on subjective criteria.

Since Nowak again presents no evidence of discrimination other than his competing qualifications, Nowak must demonstrate that his qualifications were so superior that no reasonable person could have selected Bomicino for the position to survive summary judgment. *Millbrook*, 280 F.3d at 1180. There is no evidence to suggest that Nowak can satisfy this substantial burden.

Prior to obtaining the position, Bomicino had worked as a Team Leader in Engine Test and had recent and relevant manufacturing experience. By contrast, at the time Nowak applied for the position, Nowak had served as a labor relations specialist in the Human Resources department for the nearly 13 years. In addition, as a Team Leader, Bomicino had developed the relevant experience of leading a group of professional engineers, whereas Nowak admittedly lacked this experience.

Nowak claims that the fact that he had an MBA is proof that his qualifications were superior to those of Bomicino. While Nowak's advanced degree was undoubtedly an asset, it is, by itself, insufficient to demonstrate that he was more qualified than Bomicino, who possessed more recent and relevant manufacturing experience. Accordingly, International's motion for summary judgment relating to the Engine Assembly and Materials position is granted.

## II.    Retaliation

Counts V - IX of Nowak's third amended Complaint allege that International retaliated

23

against Nowak by (1) giving him a negative performance evaluations after he filed his EEOC charges of discrimination and the complaint in this lawsuit; (2) not allowing him to apply for the position of Human Resources Director, International Finance Group; and (3) terminating him. In assessing this part of his case, the court follows the standards for retaliation claims announced in *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640 (7th Cir. 2002).

Nowak may establish a *prima facie* case of retaliation in one of two ways. First, Nowak may present direct evidence of a statutorily protected activity, an adverse employment action, and a causal connection between the two. *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). If Nowak meets this burden, he can survive summary judgment unless International presents unrebutted evidence that it would have taken the adverse employment action against Nowak anyway, "in which event [International's] retaliatory motive, even if unchallenged, was not a but-for-cause of [Nowak's] harm." *Id.* (quoting *Stone*, 281 F.3d at 642).

The second method for establishing a *prima facie* case is the Seventh Circuit's adaptation of the *McDonnell Douglas* burden-shifting test to the retaliation context, which requires Nowak to show that (1) he engaged in a statutorily protected activity; (2) he performed his job according to International's legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* "If [Nowak] establishes these elements, the burden shifts to [International] to come forward with a legitimate, non-invidious reason for the adverse employment action....Once [International] presents a legitimate non-invidious reason for the adverse action, the burden shifts back to [Nowak] to show that [International's] reason is pretextual." *Stone*, 281 F.3d at 644.

24

Nowak does not specify, and his analysis of his claims does not clearly indicate, whether he is proceeding under the direct or indirect methods of proof. While Nowak articulates the elements of a *prima facie* case under the direct method of proof, he does not appear to recognize that he may also proceed under the indirect method. To add to the confusion, International summarily concludes that Nowak has presented no direct evidence of retaliation and thus proceeds to analyze Nowak's claims exclusively under the indirect method of proof. As a consequence, the parties' arguments are not aligned. In an effort to resolve any confusion, the court will analyze Nowak's claims under both the direct and indirect methods of proof.

### A.   Negative Performance Evaluations

International argues that Nowak's claims relating to his negative performance evaluations must fail because he cannot satisfy the second and third elements of a *prima facie* case under the direct method of proof.

International first contends that Nowak's negative performance evaluations do not constitute adverse employment actions. It is well established that negative performance evaluations do not alone constitute adverse employment actions. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002). But as Nowak notes, negative performance evaluations may constitute adverse employment actions when they result in immediate and tangible consequences such as ineligibility for job benefits like promotion, transfer, or advantageous increases in responsibilities. *Whittaker v. Northern Illinois University*, 424 F.3d 640, 648 (7th Cir. 2005) (citing *Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001)). In this case, Nowak's negative performance evaluations resulted in his immediate ineligibility for promotion.

Thus, Nowak's negative performance evaluations carried with them a tangible consequence that materially altered the terms and conditions of his employment. The mere fact that the negative performance evaluations also did not disqualify him from receiving salary increases or bonuses does not alter the fact that they subjected him to other immediate and significant consequences. Therefore, Nowak's negative performance evaluations constitute adverse employment actions.

International also argues that Nowak's claims must fail under the direct method of proof because Nowak cannot establish a causal link between the filing of his EEOC charges and complaint and his negative performance evaluations. "A causal link between the protected expression and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision. *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (citation omitted). "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Id.* (quoting *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004)).

Nowak argues that the "suspicious timing" of his negative performance evaluations satisfies the causal link element of a *prima facie* case under the direct method of proof. "Suspicious timing may permit a plaintiff to survive summary judgment if there is other evidence that supports the inference of a causal link." *Culver*, 416 F.3d at 547. At the same time, the mere temporal proximity between the protected expression and the action alleged to have been taken in retaliation for that expression "will rarely be sufficient in and of itself to create a triable issue." *Stone*, 281 F.3d at 644. In this case, Nowak provides nothing to establish causation other than his "pure speculation" that International "was actually lying in wait for the opportunity to punish" Nowak for filing his EEOC charge. *Haywood*, 323 F.3d at 532. Nowak filed his first

EEOC charge on January 25, 2002 but did not receive his first negative performance evaluation for over a year. The temporal proximity between Nowak's protected expression and his negative performance evaluations is too attenuated to support an inference of causation. *Id.* (finding that no reasonable fact-finder could infer causation where a plaintiff was terminated one year after filing a complaint); *Davidson v. Midelfort Clinic*, 133 F.3d 499 (7th Cir. 1998) (noting that as the period of time separating the protected expression and the adverse employment action lengthens, the hint of causation weakens; no causal inference where employee was terminated five months after filing EEOC charge). Thus, Nowak's retaliation claim relating to his negative performance evaluations fails under the direct method of proof.

Nowak's claims fare no better under the indirect method of proof. Nowak has not attempted to show that he was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004) (to prove intentional discrimination, a plaintiff must prove that "the employer treated at least one similarly situated individual outside of his protected class more favorably."). Thus, Nowak's claims also fail under the indirect method of proof.

## B.    Ineligibility for the Human Resources Director, International Finance Group

International does not appear to dispute that Nowak can establish a *prima facie* case under the direct method of proof for his claim relating to International's refusal to permit him to apply for the Human Resources Director, International Finance Group position.[10] Instead, International attempts to rebut Nowak's evidence of pretext, which could fairly be construed as a

---

[10]International exclusively analyzes Nowak's claim according to the indirect method of proof. International devotes its entire discussion of Nowak's claim to an attempt to rebut Nowak's evidence of pretext.

challenge to Nowak's ability to establish the causation element. The characterization of International's challenge is ultimately immaterial because the question of pretext overlaps substantially with that of causation.

International contends that it refused to permit Nowak to apply for the position because a company policy precludes individuals receiving a rating below "meets expectations" on their most recent performance evaluation from self-nominating for job postings. Having articulated a non-invidious reason for the adverse employment action, the burden now shifts back to Nowak.

Nowak alleges, and International does not dispute, that International permitted another employee, John Holifield, to apply for a promotion despite the fact that he had received the same "meets expectations with few exceptions" performance evaluation that Nowak received and on which International relied to justify Nowak's ineligibility for promotion. The inconsistent application of the policy permits an inference that International's stated reason for denying Nowak an opportunity to apply for promotions is pretextual. International responds that James Marzec denied Nowak the opportunity to self-nominate for the position, while a different International employee, Sam Rosa, made the exception for Holifield. For that reason, International argues that the exception made for Holifield cannot support an inference of pretext. It is undisputed, however, that Marzec contacted Rosa and requested that Rosa consider interviewing Holifield despite Holifield's rating as less than "meets expectations." The mere fact that Marzec did not personally interview anyone for a position who rated less than "meets expectations" does not defeat the inference that arises from his recommendation of Holifield to Rosa. Consequently, a reasonable jury could infer that Marzec's reliance on the company policy was a pretextual justification for retaliation against Nowak. Accordingly, International's motion

28

for summary judgment on this count is denied.

## C.    Termination

International appears to argue that Nowak's claim relating to his termination must fail because he cannot establish that International's reason for terminating him is pretextual.[11] International articulates two legitimate, nondiscriminatory reasons for Nowak's termination. It asserts that Nowak failed to meet performance expectations beginning in 2002 and continuing through March 2004 and that Nowak's performance had not improved during his periodic evaluations by Marzec between March 2004 and his termination in September 2004.

As International has asserted a nondiscriminatory justification for Nowak's termination, the burden now shifts to Nowak to put forth evidence sufficient to support a finding that International's proffered reason was merely a pretext for discrimination. A pretext is not a mere error, but a lie, a phony reason for the action. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). Thus, "[i]t is not enough for [Nowak] to simply assert that the acts for which [he] was terminated did not occur." *Billups v. Methodist Hosp.*, 922 F.2d 1300 (7th Cir. 1991). Instead, Nowak must cite evidence that demonstrates that International did not honestly believe that the events did occur. *Roberts v. Separators, Inc.*, 172 F.3d 448, 453 (7th Cir. 1999).

To demonstrate pretext, Nowak must put forth evidence showing (1) that the proffered reasons have no basis in fact, (2) that the proffered reasons did not actually motivate the termination, or (3) that they were insufficient to motivate the discharge." *Velasco v. Illinois*

---

[11]Analyzing Nowak's claim under the indirect method of proof, International argues that Nowak cannot demonstrate that he was meeting International's legitimate expectations. Translated into the direct method of proof context, International argues that Nowak cannot demonstrate that International terminated his employment for a reason other than his deficient job performance. *See Gordon v. United Airlines*, 246 F.3d 878, 886 (7th Cir. 2001) ("[T]he issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext.")

*Dep't of Human Services*, 246 F.3d 1010, 1017 (7th Cir. 2001). Nowak tries to show that International's reasons for his termination had no basis in fact.

Throughout the spring and early summer of 2004, Marzec informed Nowak that his performance did not meet International's expectations and that his failure to demonstrate the desire and initiative to improve his performance could subject him to termination. Marzec met with Nowak on April 16, 2004 to discuss Nowak's interim 2004 TPM review and reviewed a letter memorializing that meeting with Nowak on April 21, 2004. In that letter, Marzec set forth International's expectations of a Senior Labor Specialist in detail. Likewise, on June 21, 2004, Marzec notified Nowak by letter that he had failed to fulfill the expectations as set forth in the April 21, 2004 letter. Marzec further stated that Nowak continued to fail to demonstrate the desire and initiative to make necessary and significant changes in his job performance. Marzec then set forth Nowak's responsibilities and expectations in even greater detail and warned that failure to meet the stated objective could result in his termination. Thus, the undisputed evidence makes clear that Marzec fully informed Nowak of the deficiencies in his performance and gave him at least six months to correct them. *See Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir. 1992) (finding that plaintiff could not adduce evidence that would allow a factfinder to conclude that she was terminated in retaliation for filing a sexual harassment complaint where the decisionmaker fully informed her of her performance deficiencies and gave her every opportunity to correct them).

Nowak presents no evidence to dispute that Marzec honestly believed that Nowak's performance had failed to improve between March 2004 when Marzec became Nowak's supervisor and Nowak's termination on September 14, 2004. Instead, Nowak relies solely on his

30

declaration in which he states that he had met or was on the way to meeting his goals by the time Marzec terminated his employment, which is not sufficient to create a triable issue of fact. "Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997). Moreover, even if Nowak's assertions were credited, his claim still cannot survive summary judgment because it does not undermine Marzec's belief that his performance had not improved. At most, Nowak's declaration shows that he disagrees with Marzec's assessment of his performance. International's explanation can be "foolish or trivial or even baseless," however, as long as it "honestly believed" its proffered reasons for terminating Nowak's employment. *Hartley v. Wisc. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997).

Nowak spends considerable effort attempting to rebut Bednarz's and Marzec's criticisms of his performance in 2002 and 2003, but Nowak's poor job performance during those years was a separate justification for International's termination of his employment. To survive summary judgment, Nowak must raise an issue of fact regarding each of the reasons proffered by International for his termination. See *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 920 (7th Cir. 1996) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995) ("The fact that some of the [employer's proffered] reasons were successfully called into question by [the employee's deposition or affidavit does not defeat summary judgment if at least one reason for [the adverse employment action] stands unquestioned."). Thus, Nowak's inability to rebut Marzec's testimony that he terminated Nowak because his employment did not improve through the first half of 2004 is fatal to his claim.

Nevertheless, even if International's multiple grounds for termination were considered

intertwined, Nowak's claim of retaliatory termination would still not withstand summary judgment. The evidence in the record demonstrates that Bednarz and Marzec honestly believed that Nowak's performance was unsatisfactory, and there is more than an ample factual basis to support that belief. Indeed, although Nowak disagrees with nearly every criticism of his performance, he nevertheless admits that in 2003 he failed to meet some of his performance goals. Nowak states that he was unable to meet the goals. His explanation of extenuating circumstances, however, does not alter the fact that he did not meet the performance goal. Moreover, there is no evidence to suggest that Bednarz was aware of the extenuating circumstances that Nowak asserts excuse his non-performance. Still further, the extenuating circumstances cited by Nowak are relevant only to his performance of one of "Goal #1." Nowak provides no explanation for his failure to meet "Goal #2."

Ultimately, the evidence cited by Nowak merely demonstrates that he disagrees with International's assessment of his performance or that he believes extenuating circumstances excuse his poor performance. For example, Nowak objects to Bednarz's criticism that Nowak failed to get management support for a company-wide recognition program. Nowak argues that it is clear that this criticism was fabricated because Bednarz was advised by managers that they would not participate in the program. It is worth nothing that the evidence indicates that only one manager notified Bednarz that they would not participate. Even if all of the managers informed Bednarz that they would not participate, however, such evidence would not demonstrate that Bednarz did not believe that it was Nowak's responsibility to persuade them to do so. Indeed, this was the goal stated in Nowak's TPM and the very basis for Bednarz's criticism.

Similarly, Bednarz criticized Nowak in his 2002 TPM review for failing to demonstrate

leadership in the development and implementation of a labor relations strategy for International's 2002 labor contract negotiations. Specifically, Bednarz stated that he had to guide Nowak through the process, telling him what to do, how to gather needed information, how to prioritize that information, and had to identify for Nowak people in the financial community who could work on his team. Nowak does not directly dispute Bednarz's criticisms. Instead, Nowak simply responds that he "took it upon himself to go to the departments and get team leaders and supervisors together and asked them questions as to what in the contract language was preventing them." Even if Nowak is credited with having taken such action, it is hardly sufficient to support an inference that he met International's expectations without exception with regards to the performance of what was indisputably Nowak's single greatest accountability.

Nowak has failed to demonstrate that he would not have been fired "but for" International's alleged retaliatory motive. Despite his acknowledged performance failure and the multiple other performance deficiencies identified by Bednarz and Marzec, Nowak was not fired. Instead, Bednarz and Marzec exhaustively detailed the areas in which Nowak's performance needed to improve, volunteered their assistance to help him achieve those objectives, and allowed him a considerable amount of time to rectify the performance problems. Based on the evidence in the record, there is simply no basis to infer retaliation when Nowak was not fired until two and one-half years after he filed his first charge of discrimination.

Accordingly, International's motion for summary judgment with respect to Nowak's retaliatory discharge claim is granted.

**ORDER**

For the reasons stated above, the defendant's motion for summary judgment [#43] is granted as to Counts I, V - VII, and IX. Defendant's motion for summary judgment is denied as to Counts II - IV, with respect to Plaintiff's claims relating to the Human Resources Manager, Corporate Staff Position, and Count VIII.

Dated: December 19, 2005       ENTER _Joan H Lefkow_

                                      JOAN HUMPHREY LEFKOW
                                      United States District Judge